1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELLESS KEOMANY,

11              Plaintiff,                   No. CIV S-04-2457 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15              Defendant.                   ORDER

16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under

19   Title II of the Social Security Act ("Act").  The case is before the undersigned pursuant to 28

20   U.S.C. § 636(c)(consent to proceed before a magistrate judge).  For the reasons discussed below,

21   the court will grant plaintiff's motion for summary judgment or remand and deny the

22   Commissioner's cross-motion for summary judgment.

23   /////

24   /////

25   /////

26   /////

1

I.  Factual and Procedural Background

In a decision dated July 7, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has the severe impairment of depression, but that this impairment did not meet or medically equal a listed impairment; plaintiff's allegations regarding his limitations were not entirely credible; plaintiff has the residual functional capacity to perform medium exertional work, including simple repetitive tasks with minimum public contact; plaintiff is not precluded from performing his past relevant work; and plaintiff is not disabled.  Administrative Transcript ("AT") 19-20.  Plaintiff contends

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1  that the ALJ erred by not addressing all of the limitations imposed by the examining physician, in

2  his finding that plaintiff was not credible, and by failing to utilize the testimony of a vocational

3  expert in determining plaintiff's residual functional capacity.

4  II.  Standard of Review

5        The court reviews the Commissioner's decision to determine whether (1) it is

6  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

7  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

8  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

9  Substantial evidence means more than a mere scintilla of evidence, but less than a

10  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

11  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

13  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

14  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

15  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

16  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

17  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

18  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

19  substantial evidence supports the administrative findings, or if there is conflicting evidence

20  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

21  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

22  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

23  1335, 1338 (9th Cir. 1988).

24  /////

25  /////

26  /////

III.  Analysis

    a.  The ALJ Erred by not Properly Weighing the Medical Evidence in the Case.

        The ALJ found plaintiff to have the residual functional capacity to be able to perform medium exertional activity, involving the lifting and carrying of up to 50 pounds occasionally and 25 pounds frequently.  AT 20.  In addition, the ALJ determined that plaintiff's severe depression left him able to perform only simple repetitive tasks with minimal public contact.  Id.  The ALJ based plaintiff's residual functional capacity on the psychiatric assessment of nonexamining doctors with the State Agency, and failed to properly credit the opinion of plaintiff's examining psychiatrist or adequately explain its rejection.  This weighing of the medical evidence was in error.

        In his assessment, the examining physician, Dr. Daigle, found plaintiff to be not significantly limited in his ability to carry out simple instructions and slightly limited in his ability to carry out detailed instructions.  AT 371-72.  Furthermore, Dr. Daigle determined that plaintiff was slightly limited in his ability to relate and interact with supervisors, coworkers, and the public.  In addition, Dr. Daigle found plaintiff to be slightly to moderately limited in his ability to maintain concentration, attention, persistence, and pace; and moderately limited in his ability to associate with day to day work activity, including attendance and safety, and in his ability to adapt to the stressors common to a normal work environment.  AT 372.  In spite of these limitations, Dr. Daigle stated that plaintiff should be encouraged to return to his former job as a welder or to engage in some other limited form of employment.  AT 371.

        This finding of plaintiff's mental impairments is consistent in many aspects with the other medical opinions in the record.  Doctors at the State Agency determined plaintiff was mildly to moderately restricted in his activities of daily living, and moderately limited in his ability to maintain social functioning and concentration, persistence, and pace.  AT 387.  Consequently, the State Agency found plaintiff moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods of

4

time, perform within a schedule, work in coordination with and proximity to others, complete a normal workweek without disruption, interact with the public, maintain socially appropriate behavior, and respond appropriately to changes in the work setting.  AT 391-92.  The State Agency's ultimate conclusion was that plaintiff was able to do simple repetitive tasks with limited public contact.  AT 393.

The ALJ's findings do not expressly adopt or reject either of these medical opinions.  However, the ALJ noted the consistency between his conclusions and the findings of the State Agency.  AT 18.  Furthermore, he adopted verbatim in his residual functional capacity assessment the State Agency's opinion that plaintiff was capable of "SRT," or simple repetitive tasks, and "limited public contact."  AT 393.  With his functional adoption of the State Agency's findings, the ALJ implicitly rejected Dr. Daigle's conclusion.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of an examining physician is generally entitled to greater weight than the opinion of a nonexamining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984).  An ALJ may reject an uncontradicted opinion of an examining medical professional only for "clear and convincing" reasons.  Lester , 81 F.3d at 831.  In contrast, a contradicted opinion of an examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.

In this case, the ALJ did not provide any reasons, specific, legitimate, or otherwise, for rejecting the opinion of the examining psychiatrist.  While the plaintiff's residual functional capacity contains many of the limitations found by Dr. Daigle, it does not include any expression of plaintiff's limited ability to interact with supervisors and coworkers.  Failure to include this limitation in the residual functional assessment, or to provide the rationale upon which it was discredited was error.

/////

1          The residual functional capacity is the most a plaintiff can do despite his or her

2   limitations.  20 C.F.R. § 404.1545(a)(1).  It is a determination of what plaintiff is capable of,

3   rather than of what they are not capable.  SSR 96-8p.  Dr. Daigle found no significant limitations

4   in plaintiff's ability to follow simple instructions.  AT 371.  The ALJ incorporated this conclusion

5   into his finding that plaintiff was capable of simple, repetitive tasks.

6          However, Dr. Daigle also found plaintiff slightly limited in his ability to interact

7   with supervisors, coworkers, and the public.  The ALJ captured one aspect of this limitation in his

8   determination that plaintiff could perform tasks with minimal public contact.  AT 17.  However,

9   the ALJ failed to include any limitations on contact with supervisors and coworkers, or explain his

10  rationale for rejecting this aspect of Dr. Daigle's opinion.

11         The ALJ articulates no reason for failing to give due credit to the opinion of the

12  examining psychiatrist.  While the ALJ states that he has considered "all medical opinions" in

13  making the residual functional capacity assessment, his discussion is limited to the medical

14  evidence from plaintiff's treating physician and the opinion of the State Agency.  In fact, the ALJ

15  limits his examination of Dr. Daigle's findings to assessing the severity of plaintiff's depression at

16  step two of the sequential analysis.  AT 17.  At no time does the ALJ provide any further

17  discussion of Dr. Daigle's opinion or any ground upon which it might be rejected.

18         Furthermore, the ALJ's discussion of the State Agency findings provide no basis

19  upon which it might be accepted over the opinion of the examining physician.  The ALJ clearly

20  adopts all aspects of the State Agency opinion, yet severely limits his examination of that opinion,

21  noting only that it has been considered and that it is essentially consistent with his.  AT 18.  This

22  cursory summation can hardly be considered a specific or legitimate basis upon which to discredit

23  Dr. Daigle's opinion.

24         The ALJ gives a more thorough examination of the medical evidence provided by

25  plaintiff's treating physician, Dr. Cornes.  Unfortunately, the ALJ's crediting of the treating

26  physician's opinion in this case does nothing to undermine the opinion of Dr. Daigle.  Dr. Cornes

1   provides significant medical history as it relates to plaintiff's physical problems.  However, his

2   assessment of plaintiff's mental impairments is limited to several diagnoses of depression.  AT

3   340, 341, 343, 401, 402, 403, and does not relate any specific functional limitations.

4           Indeed, in some respects, the medical evidence from Dr. Cornes may support a

5   residual functional assessment more limited than that stated by the ALJ.  On at least two

6   occasions, Dr. Cornes determined that plaintiff's ailments precluded him from work.  In May

7   2002, Dr. Cornes stated that plaintiff was disabled and could not work for at least six months.  AT

8   341.  In March 2003, Dr. Cornes repeated that plaintiff should remain off work until June 2003.

9   AT 348.  Other than these distinct periods of disability, Dr. Cornes offers no specific assessment

10  of plaintiff's ongoing functional limitations that would support the ALJ's decision to discredit

11  important aspects of Dr. Daigle's opinion.

12          In addition, as discussed below, the ALJ properly discounted plaintiff's subjective

13  complaints of disability.  However, this finding, while supported by substantial evidence in the

14  record, is not offered by the ALJ as a basis to reject Dr. Daigle's opinion.  The ALJ makes no

15  challenge to Dr. Daigle's report on the basis that it is influenced by the plaintiff's subjective

16  complaints, Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) (credibility determinations do

17  factor into evaluations of medical evidence), nor does Dr. Daigle report any concern about

18  plaintiff's credibility.  AT 367 ("[plaintiff] presented a good history").

19          This failure to provide the specific and legitimate reasons necessary to reject the

20  opinion of the examining psychiatrist was in error.  Remand is required in order to permit a proper

21  evaluation of the evidence.  In the event that the evidence dictates a different residual functional

22  capacity, the sequential analysis must be continued based upon that new finding.

23      b.  The ALJ Properly Assessed Plaintiff's Credibility.

24          The ALJ determines whether a disability applicant is credible, and the court defers

25  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

26  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

7

1   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

2   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

3   supported by "a specific, cogent reason for the disbelief").

4           In evaluating whether subjective complaints are credible, the ALJ should first

5   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

6   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

7   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

8   medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

9   (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

10  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

11  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

12  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

13  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

14  and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

15  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in

16  part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

17  1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

18  (9th Cir. 1990).  Without affirmative evidence of malingering, "the Commissioner's reasons for

19  rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of

20  Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

21          The ALJ found plaintiff not to be credible.  In making this determination, the ALJ

22  noted that plaintiff's subjective complaints were not supported by the objective medical evidence

23  in the record.  AT 18.  This was particularly true as they related to plaintiff's complaints about his

24  physical ailments.  The ALJ's finding that these inconsistencies cast doubt upon plaintiff's

25  credibility was proper.

26  /////

1      The medical evidence in the record is inconsistent with plaintiff's complaints that

2  he suffers from debilitating leg pain, AT 37, dizziness, AT 38, chest pain, AT 39, high blood

3  pressure, AT 45, asthma, AT 46, and low blood sugar, AT 46.  As noted by the ALJ, the medical

4  records of plaintiff's treating physician, Dr. Cornes, fail to reveal any complaints other than those

5  relating to his depression, such as poor sleep or irritability.  The assessment done by Dr. Selcon

6  stated that plaintiff had no functional limitations and that he could perform a full range of work

7  without any restrictions.  AT 356.  Examinations of plaintiff's eyes as well as his chest showed no

8  abnormalities.  AT 335, 363.  Finally, the ALJ noted the lack of any disabling symptoms during

9  plaintiff's interview with a representative of the Social Security Administration.  AT 18, 308.

10     The factors considered by the ALJ were all valid and supported by substantial

11  evidence in the record.  The ALJ properly noted the marked disparity between plaintiff's alleged

12  physical condition and the actual medical evidence.  The ALJ's credibility determination was

13  based on permissible grounds and will not be disturbed.

14          c.  The ALJ's Failure to Consult a Vocational Expert is not at Issue at this Time.

15     The Medical-Vocational Guidelines ("the grids") are in table form.  The tables

16  present various combinations of factors the ALJ must consider at step five of the sequential

17  analysis in determining whether other work is available.  See generally Desrosiers, 846 F.2d at

18  577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age,

19  education, and work experience.  For each combination, the grids direct a finding of either

20  "disabled" or "not disabled."  Where the grids do not adequately capture the full range of

21  plaintiff's exertional and nonexertional limitations, use of a vocational expert instead of the grids

22  is required.  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell,

23  461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).

24     The ALJ did not utilize the grids or a vocational expert in determining plaintiff is

25  not disabled.  Rather, the sequential analysis ended at step four because the ALJ found plaintiff

26  could perform his past relevant work.  Consequently, use of a vocational expert was not required.

1 Upon remand to permit the ALJ to properly weigh the medical evidence in this case as it relates to

2 plaintiff's residual functional capacity, the use of the grids or a vocational expert at step five may

3 become necessary should the ALJ determine plaintiff cannot perform his past relevant work.

4 Given the order to remand and the sequential analysis that may follow, analysis of this issue is

5 inappropriate at this time.

6       The court notes that the ALJ relied upon plaintiff's own description of his job

7 duties to determine plaintiff's past relevant work.  AT 19.  Such reliance is not improper.  <u>See</u>

8 <u>Pinto v. Massanari</u>, 249 F.3d 840, 845 (9th Cir. 2001); <u>see also</u> SSR 82-61 (past relevant work

9 determined by particular past job or the occupation as generally performed).  However, the ALJ

10 failed to provide a sufficient rationale to explain his findings about the extent of plaintiff's past

11 relevant work.

12       Plaintiff provided multiple descriptions of his past relevant work.  Originally,

13 plaintiff wrote in his Disability Report, AT 298, that his job as a welder required lifting only 15

14 pounds.  He later testified that it required lifting of up to 70 pounds.  AT 40.  The ALJ may

15 properly resolve this dispute based upon medical evidence and his assessment of plaintiff's

16 credibility; however, the rationale for his decision should be apparent and supported by evidence

17 in the record.  SSR 96-7p.  No such rationale appears in the findings.

18 /////
19 /////
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

1    For the foregoing reasons, this matter will be remanded under sentence four of 42

2  U.S.C. § 405(g) for further development of the record and further findings addressing the

3  deficiencies noted above.

4    Accordingly, IT IS HEREBY ORDERED that:

5    1.  Plaintiff's motion for summary judgment is denied;

6    2.  The Commissioner's cross motion for summary judgment is denied; and

7    3.  This matter is remanded for further proceedings consistent with this order.

8  DATED: June 5, 2006.

9

10    UNITED STATES MAGISTRATE JUDGE

11

12  ggh13
    Keomany.ss.wpd
13

14

15

16

17

18

19

20

21

22

23

24

25

26